# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

THOMAS MESSER,                                Case No. 1:10-cv-545
    Plaintiff                           Weber, J.
                                             Litkovitz, M.J.
  vs

COMMISSIONER OF                              **REPORT AND**
SOCIAL SECURITY,                            **RECOMMENDATION**
    Defendant

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 8), the Commissioner's response in

opposition (Doc. 12), and plaintiff's reply memorandum. (Doc. 13).

## PROCEDURAL BACKGROUND

      Plaintiff was 49 years old at the time of the administrative law judge's (ALJ) hearing. He

has a tenth grade education and past relevant work as a laborer and a late night manager of a

grocery store. Plaintiff filed applications for DIB and SSI alleging an onset date of disability of

August 23, 2004, due to heart disease, high blood pressure, back pain, COPD, and mental

problems. (Tr. 50-51, 199-201). Plaintiff's applications were denied initially and upon

reconsideration. Plaintiff then requested and was granted a de novo hearing before an ALJ. On

June 6, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing

before ALJ Samuel Rodner. A vocational expert (VE) and a medical expert also appeared and

testified at the hearing.

On June 30, 2008, the ALJ issued a decision denying plaintiff's DIB and SSI

applications. The ALJ determined that plaintiff suffers from the following severe impairments:

left ventricular dysfunction, left ventricular hypertrophy, hypertension, low back pain, chronic

obstructive pulmonary disease, psychotic disorder not otherwise specified, generalized anxiety

disorder, and alcohol and cannabis abuse, both reportedly in remission. (Tr. 16). The ALJ found

that plaintiff's impairments do not meet or equal the level of severity described in the Listing of

Impairments. (Tr. 16). According to the ALJ, plaintiff retains the residual functional capacity

(RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)[1] except that

plaintiff is limited to simple one and two step instructions and routine repetitive tasks in a low

stress environment with minimal contact with others. He is able to lift and carry 10 pounds

frequently and 20 pounds occasionally; sit six hours in an eight hour day; and stand and walk two

hours at a time with a break for 8 hours total. (Tr. 18). Plaintiff should also avoid concentrated

exposure to fumes, dust, gases and other pollutants. *Id.* The ALJ next determined that plaintiff

is unable to perform any past relevant work. (Tr. 24-25). The ALJ further determined that

plaintiff is capable of performing a significant number of jobs in the national economy including

jobs as a stocker, assembler, packer and off bearer. (Tr. 25). Accordingly, the ALJ concluded

that plaintiff is not disabled under the Act. (Tr. 26).

Plaintiff's request for review by the Appeals Council was denied, making the decision of

the ALJ the final administrative decision of the Commissioner.

---

[1] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§404.1567(b) (*re*: DIB), 416.967(b) (*re*: SSI). Social Security regulations provide that "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be

3

expected to last for a continuous period of not less than twelve months.  Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.  20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations.  20 C.F.R. § 404.1520.  First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends.  Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends.  Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded.  20 C.F.R. § 404.1520(d).  Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment.  If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform.  *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981).

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments.  20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing).  The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance

4

of work. 20 C.F.R. § 404.1525(a). If plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). The sequential evaluation analyses outlined in 20 C.F.R. §§ 416.920 and 416.924 apply to the evaluation of mental impairments. However, the

regulations provide a special procedure for evaluating the severity of a mental impairment at steps two and three for an adult. 20 C.F.R. § 416.920a. The special procedure also applies when Part A of the Listing is used for an individual under age 18. *Id.* At step two, the ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." *Rabbers v. Commissioner Social Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1520a(b)(1)). If so, the ALJ "must then rate the degree of functional limitation resulting from the impairment." *Id.* (citing 20 C.F.R. § 404.1520a(c)(3)).

The claimant's level of functional limitation is rated in four functional areas, commonly known as the "B criteria": 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. *Id.* (citing 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00 et seq.; *Craft v. Astrue,* 539 F.3d 668, 674 (7th Cir. 2008)). The degree of limitation in the first three functional areas is rated using the following five-point scale: None, mild, moderate, marked, and extreme. *Id.* (citing 20 C.F.R. § 404.1520a(c)(4)). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale: None, one or two, three, four or more. *Id.* If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. *Id.* (citing § 404.1520a(d)(1)). Otherwise, the impairment is considered severe and the ALJ will proceed to step three. *Id.* (citing § 404.1520a(d)(2)).

At step three of the sequential evaluation, an ALJ must determine whether the claimant's impairment "meets or is equivalent in severity to a listed mental disorder." *Id.* A claimant

6

whose impairment meets the requirements of the Listing will be deemed conclusively disabled. *Id.* If the ALJ determines that the claimant has a severe mental impairment that neither meets nor medically equals a listed impairment, the ALJ will then assess the claimant's RFC before completing steps four and five of the sequential evaluation process. *Id.* (citing 20 C.F.R. § 404.1520a(d)(3)).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-530 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). Likewise, a treating physician's opinion is entitled to substantially greater weight than the contrary opinion of a non-examining medical advisor. *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir. 1994).

7

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's opinion. 20 C.F.R. § 404.1527(d). These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(3)-(6); *Wilson*, 378 F.3d at 544. The ALJ must likewise apply the factors set forth in § 404.1527(d)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. § 404.1527(d). When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with

8

or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043, 1990 WL 94, at *3 (6th Cir. Jan. 2, 1990). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

9

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 8 at 1-6, Doc. 12 at 2-8) and will not be repeated here. Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff assigns two errors in this case: (1) the ALJ erred in failing to recontact the medical source that performed a consultative mental evaluation; and (2) the ALJ erred in weighing the opinion of plaintiff's treating physician. For the reasons that follow, the Court finds the decision of the ALJ is not supported by substantial evidence and should be reversed and remanded for further proceedings.

### I. The ALJ erred in weighing the opinion of plaintiff's treating cardiologist.

Plaintiff contends the ALJ erred in failing to afford controlling or substantial weight to the opinion of plaintiff's treating cardiologist, Dr. Razavi, and instead improperly credited the findings of Dr. Callard, the medical expert who testified at the hearing.

The ALJ summarized plaintiff's cardiac impairments as follows:

The medical evidence reveals a history of hypertension, left ventricular dysfunction, [and] left ventricular hypertrophy.[2] A left heart catheterization dated April 14, 2003, revealed anomalous right coronary artery; idiopathic non-ischemic cardiomyopathy; and history of hypertension. An echocardiogram study dated August 11, 2003, revealed left ventricular enlargement and dysfunction and left atrial enlargement and ejection fraction of approximately 36-42 percent. More recent testing which involves a Doppler study dated April 24, 2006, revealed abnormal findings of mildly to moderately decreased left ventricular function; abnormal anterior wall and septum; an estimated 40 to 45 percent left ventricular ejection fraction; left ventricular hypertrophy; and trace mitral regurgitation. The

---

[2]Ventricular hypertrophy is the enlargement of the muscle tissue that makes up the heart's ventricles (the heart's main pumping chambers). *See* http://www.mayoclinic.com/health/left-ventricular-hypertrophy/DS00680 (last accessed on Aug. 3, 2011).

claimant had a blood pressure reading that ranged from 178/112 on December 22, 2004 to 222/118 on April 11, 2006.

(Tr. 16-17, citing Tr. 118-19, 293; Tr. 114; Tr. 120-21; Tr. 258; Tr. 283; Tr. 140, 277).

Dr. Razavi, a cardiologist, has treated plaintiff since 2003. (Tr. 118). In a July 9, 2007 letter, Dr. Razavi states:

> I have been following this patient for control of hypertension and left ventricular dysfunction. He clearly has a history of prolonged hypertension and organ damage, which includes left ventricular dysfunction as well as left ventricular hypertrophy. This is criteria which will make the patient disabled by Social Security. The patient also has COPD which limits his activities. . . .

(Tr. 293). On September 27, 2007, Dr. Razavi completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." (Tr. 298-301). Dr. Razavi found that plaintiff was capable of lifting less than 10 pounds, standing/walking less than two hours in an eight hour workday, and sitting less than six hours. (Tr. 298-99). Dr. Razavi further indicated that plaintiff was unable to climb, balance, kneel, crouch, crawl, or stoop in an eight hour work day. (Tr. 299). Dr. Razavi also noted numerous environmental limitations, limited handling ability, and limited pushing/pulling ability. (Tr. 299-301). In support of Dr. Razavi's assessments, plaintiff cites to multiple objective clinical findings including T wave abnormalities (Tr. 86-87), angiogram abnormalities (Tr. 110), ventricular enlargement and dysfunction on an echocardiogram (Tr. 119), decreased left ventricular function, abnormal findings on the anterior wall and septum, and abnormal LV ejection fraction. (Tr. 255-286).

The ALJ gave no weight to Dr. Razavi's opinions. Instead, the ALJ relied on the opinion of Dr. Callard who testified at the hearing as a cardiology medical expert. (Tr. 335-350). Dr. Callard testified that plaintiff had a history of hypertension, chronic chest pain, shortness of

11

breath with activity, mild to moderate left ventricular dysfunction, and moderate left ventricular hypertrophy. (Tr. 335). Dr. Callard further testified that to establish chronic heart failure under Listing 4.02, plaintiff would need to show an ejection fraction of 30 percent or less, and while plaintiff demonstrated an ejection fraction of 25 percent in the past, his most recent ejection fraction was 40 to 45 percent.[3] (Tr. 338, 349). With respect to Dr. Razavi's July 2007 letter, Dr. Callard agreed that plaintiff suffered from prolonged hypertension, but testified that he was unable to find any evidence of organ damage. (Tr. 337). Dr. Callard noted that severe hypertension results in organ damage most commonly in the kidneys, and can also cause strokes and visual disturbances. (Tr. 337). Dr. Callard testified that plaintiff's kidney function was entirely normal and there was no documentation of any visual disturbances in the evidence of record. (Tr. 337, 342). Dr. Callard opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and could sit, stand, and walk eight hours each day with breaks and two hours without breaks. (Tr. 340-41). The ALJ gave "great weight" to Dr. Callard's assessment "because he has expertise in the field of cardiology, and his assessment is consistent with the record as a whole." (Tr. 23).

The ALJ gave several reasons for giving no weight to the treating cardiologist's opinions. First, the ALJ found that Dr. Razavi's July 2007 opinion was not entitled to deference because Dr. Razavi's report of organ damage was inconsistent with the testimony of the medical expert

---

[3] Listing 4.02 addresses chronic heart failure and requires a showing of systolic failure with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30% or less during a period of stability (not during an episode of acute heart failure), which results in persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom [a medical consultant], preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.02.

Dr. Callard who found no objective medical evidence of organ damage. (Tr. 23, 297, 337). Second, the ALJ rejected Dr. Razavi's September 2007 functional capacity assessment finding it to be "poorly explained" because Dr. Razavi simply indicated "echocardiogram and hypertension" as the medical and clinical findings in support of his conclusions. (Tr. 23, 300). Third, the ALJ found Dr. Razavi's RFC assessment to be "inconsistent with other significant evidence." (Tr. 23). The ALJ's reasons for affording no weight to Dr. Razavi's assessments lack substantial support in the record.

First, the ALJ's reliance on Dr. Callard's testimony of no evidence of any organ damage as a reason for rejecting Dr. Razavi's opinion is without substantial support in the record. Dr. Callard testified that while severe hypertension results in organ damage most commonly in the kidneys, it can also cause strokes and visual disturbances. (Tr. 337). However, Dr. Callard testified that plaintiff's kidney function was entirely normal and there was no documentation of any visual disturbances in the evidence of record. (Tr. 337, 342). This is not correct as a factual matter. Dr. Razavi's progress notes document diminished vision on several clinical examinations of plaintiff. *See* Tr. 279 (April 17, 2006); Tr. 286 (December 7, 2006); Tr. 296 (July 16, 2007). Thus, to the extent the evidence of visual disturbances contained in the record support Dr. Razavi's finding of organ damage, the ALJ's reliance on Dr. Callard's testimony to reach a contrary conclusion is not supported by substantial evidence.

The medical expert's testimony suggests that the presence of organ damage, like visual disturbances, is an important finding in assessing the severity of plaintiff's hypertension. It is also apparent that the ALJ placed significance on the presence or absence of such a finding. If there is evidence that the medical expert and the ALJ overlooked in this regard, this may impact

the ALJ's evaluation of the severity of plaintiff's cardiac impairments and the limitations they impose on his ability to perform basic work activities. Because it is not clear what Dr. Razavi meant by organ damage, this issue should be clarified by the ALJ on remand.

Second, the ALJ also rejected the findings of Dr. Razavi because his RFC assessment was "poorly explained" as Dr. Razavi noted only "echocardiogram" and "hypertension" on the RFC form as a justification for the restrictive limitations outlined in his September 2007 assessment. (Tr. 23, 299-300). Yet, the ALJ makes no mention of the treating cardiologist's numerous progress notes from April 14, 2003 through July 16, 2007, which document Dr. Razavi's clinical examinations, tests, referrals, and treatment. Nor did the ALJ make any attempt to apply all of the regulatory factors in determining the weight to afford Dr. Razavi's opinions, including the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, and the supportability of Dr. Razavi's conclusions. *See Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Wilson*, 378 F.3d at 544). Social Security Ruling 96-2p provides in relevant part:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected.* Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. *In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.*

SSR 96-2p (emphasis added). *See also Blakley,* 581 F.3d at 408 (even where treating physician not afforded controlling weight by ALJ, that does not mean treater's opinion should be rejected).

Here, the ALJ assigned no weight to Dr. Razavi's opinions even though certain factors support affording substantial weight to the treating cardiologist's opinion. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).[4] In this regard, Dr. Razavi, a cardiac specialist, had the benefit of a long treatment relationship with plaintiff for more than four years for his cardiac impairments and hypertension, including the benefit of assessing the efficacy of various treatment modalities over time. His objective tests and clinical findings support his conclusion that plaintiff suffers from severe left ventricular dysfunction, left ventricular hypertrophy, and hypertension, findings the ALJ credited. *Cf. Cole v. Astrue*, __ F.3d __, 2011 WL 2745792, at *6 (6th Cir. July 15, 2011) (reversing and remanding for further proceedings where ALJ failed to clearly identify reasons for crediting treating physician's opinion as to diagnosis, but discrediting it as to work limitations). In this case, "[t]he ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole*, __ F.3d at __, 2011 WL 2745792, at *6 (6th Cir. July 15, 2011) (quoting *Blakely,* 581 F.3d at 407). Therefore, the Court determines that the ALJ's second reason for rejecting Dr. Razavi's assessments is without substantial support in the record.

---

[4]The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).

Third, the ALJ found Dr. Razavi's opinion to be "inconsistent with other significant evidence" (Tr. 23), relying on the testimony of Dr. Callard who testified as a medical expert at the hearing. Yet, a review of Dr. Callard's testimony on the crucial issue of plaintiff's functional capacity is confusing and equivocal at best.

At the administrative hearing, counsel for plaintiff asked Dr. Callard if he disagreed with Dr. Razavi's finding that plaintiff was capable of lifting less than 10 pounds. (Tr. 346). Dr. Callard expressed reluctance over disagreeing with the assessment of plaintiff's treating physician:

Q: Okay. And you, did you review the limitations Dr. Razavi put on him as far as-

A: Uh-huh

Q: - - lifting and you disagree with those?

A: I'm refresh.

Q: Less than 10 lbs. This is 2007.

ALJ: [Exhibit] 17F5.

ME: Okay. Yes I did see those.

BY ATTORNEY:

Q: Okay. Less than 10 lbs, less than two hours in an eight hour day, less than six hours in an eight hour day. You would disagree? By your testimony - -

A: Well, I'm not, I'm not disagreeing with Dr. Razavi. Dr. Razavi is his physician. I'm just --

ALJ: Well, Doctor, your testimony does obviously disagree with him.

ME: I gave my testimony based on what I read in the report.

16

ALJ: Right, because you're supposed to do. That's what you're supposed to do. It's basically, your testimony is based on what you've read in the file.

ME: In other words if Dr. Razavi says that's what it is, then I should say well, that's what it is?

ALJ: No, not necessarily. Of course not.

ME: Okay. I mean I - -

ALJ: We give, we give a lot of credit to treating physicians, particularly if they are specialists, but they have to provide rationale.

ME: I'm not, yeah.

ALJ: They have to provide rationale for their opinions.

ME: Well, Dr. Razavi has the advantage of --

ALJ: I understand. That's why we have a treating physician rule, but do you see anything on this form as far as organ damage, and you testified you really couldn't.

ME: Okay. I think that brings up a point. You know, I get that question, all of these, it puts the burden on me to say that this gentlemen or this lady over here can do such and such - - when all I have is something I read.

*<br>*<br>*

ME: But I, you know, I don't want to say that I, I'm disagreeing with the treating physician because he's got a great--

ALJ: What was--

ME: I am interpreting what's in this report.

(Tr. 346-348).

When asked by the ALJ whether there was an objective basis for a limitation on sitting, Dr. Callard replied, "Very little would limit sitting," without elaboration or explanation for this conclusion. (Tr. 348). Then, when questioned by plaintiff's counsel as to whether he agreed

17

with Dr. Razavi's limitations on pushing, pulling and other postural activities, Dr. Callard responded, "I have no way of evaluating that." (Tr. 349). Dr. Callard testified, "I mean, what, what would I find in the record that would give me the opportunity to evaluate whether he can push something or pull something. I can, I make these– I respond to those questions based on what I hear here." (Tr. 349).

As indicated, Dr. Callard's testimony is equivocal and confusing. While the Commissioner characterizes Dr. Callard's reluctance to disagree with Dr. Razavi as "sheepish," it appears Dr. Callard qualified his opinion based on deference to Dr. Razavi as the treating physician who treated plaintiff for a long period of time. Dr. Callard's testimony that he had "no way of evaluating" plaintiff's functional ability to push, pull, and perform other postural functions, as well as his confusing testimony recited above, calls into question the basis for his other opinions on plaintiff's ability to function. The Court is simply unable to follow Dr. Callard's, and by extension the ALJ's, reasoning for his opinion on plaintiff's functional capacity and the basis therefor to allow for meaningful judicial review. Accordingly, the ALJ's reliance on Dr. Callard's testimony does not constitute substantial evidence in support of the ALJ's RFC decision.

For these reasons, the Court determines the ALJ failed to properly weigh the opinion of plaintiff's treating cardiologist, requiring a reversal and remand of this matter for further proceedings. *See Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009).

**II. The ALJ erred in failing to recontact the state agency medical source who assessed plaintiff as unable to perform even simple, routine work.**

While plaintiff alleges disability primarily due to cardiac problems and hypertension, he also asserts that he suffers from severe mental health problems.  Despite the undisputed presence of severe mental impairments, plaintiff has not received any mental health treatment.  (Tr. 329). As such, the record relating to plaintiff's mental impairments consists of a consultative psychological examination by Dr. Seifert (Tr. 132-138), the reports of non-examining state agency psychologists (Tr. 153-169, 197, 198), and the unsigned and undated report of an additional state agency medical consultant (Tr. 179-195) (for ease of reference the Court will refer to this report as the "Doe Report").

Dr. Seifert, the consultative psychologist, examined plaintiff on December 13, 2004.  (Tr. 132-38).  Dr. Seifert reported that plaintiff had a flat effect at the beginning of the examination but his affect became more appropriate as the examination progressed.  (Tr. 134).  Plaintiff was extremely anxious, not highly verbal, had trouble organizing his thoughts, and had a short attention span, although he could follow directions.  (Tr. 134-35).  Dr. Seifert diagnosed plaintiff with a psychotic disorder, not otherwise specified, generalized anxiety disorder, alcohol abuse in reported remission, cannabis abuse in reported remission, and borderline intellectual functioning. (Tr. 137).  Dr. Seifert assigned plaintiff a Global Assessment Functioning ("GAF") score of 55, which indicated moderate symptoms and limitations.  (Tr. 137).  Dr. Seifert opined that plaintiff had moderate limitations in his ability to relate to others including co-workers and supervisors. (Tr. 137).  Dr. Seifert noted that plaintiff had trouble relating during the session and reported that when he had been employed he stayed to himself and whenever possible he did not talk to others

in the work setting. *Id*. Dr. Seifert opined that plaintiff had mild limitations in his ability to

understand and follow instructions. Dr. Seifert assessed that plaintiff had moderate limitations in

his ability to maintain attention to perform simple, repetitive tasks. In this regard, Dr. Seifert

noted that plaintiff processed at a slow pace during the session and testing indicated he had

significant deficits in both auditory and visual memory. *Id*. Finally, Dr. Seifert reported that

plaintiff had moderate limitations in his ability to withstand the stress and pressures associated

with day-to-day work activities due to his anxiety. (Tr. 138).

   In March 2005, Dr. Terry, Ph.D, a non-examining state agency consultant, reviewed

plaintiff's medical record, including Dr. Seifert's examination findings, and provided a mental

RFC assessment. Dr. Terry opined that plaintiff was capable of performing simple, repetitive

tasks in a low stress, routine work environment that did not require production quotas and had

predictable duties. (Tr. 169). Dr. Terry also opined that plaintiff should have only minimal

contact with others. (Tr. 169). Dr. Terry found that plaintiff's history of anxiety and memory

problems was credible. In May 2005, Dr. Chambly, another non-examining state agency

consultant, reviewed and affirmed Dr. Terry's mental RFC assessment. (Tr. 169). The record

also contains a "Case Analysis" from Dr. Chambly dated May 18, 2005, indicating that she gave

great weight to the findings of Dr. Seifert "as the only source of psych. data." (Tr. 197). Dr.

Raia, another state agency psychologist, also reviewed plaintiff's medical record and affirmed

Dr. Terry's mental RFC assessment. (Tr. 198).

   The unsigned and undated Doe Report includes a Psychiatric Review Technique Form, a

mental RFC assessment, and a functional capacity assessment covering the time period of August

23, 2004 through May 11, 2005, which corresponds to the time of the Reconsideration stage of

plaintiff's disability claim.  (Tr. 179-195).  The Doe Report lists diagnoses of a psychotic

disorder not otherwise specified, borderline intellectual functioning, generalized anxiety disorder,

and alcohol and cannabis abuse in remission.  (Tr. 181, 183, 184, 187).  With respect to the "B"

criteria for establishing a disabling mental impairment under the Listings, the report reflects that

plaintiff had marked restriction of activities of daily living, moderate difficulties in maintaining

social functioning, and moderate difficulties in maintaining concentration, persistence and pace.

(Tr. 189).  Dr. Doe also assessed plaintiff's mental RFC and opined that plaintiff was "markedly"

limited in the ability to: understand and remember detailed instructions; carry out very short and

simple instructions; maintain attention and concentration for extended periods; perform activities

within a schedule; maintain regular attendance and be punctual within customary tolerances;

sustain an ordinary routine without special supervision; work in coordination with or proximity

to others without being distracted by them; make simple work-related decisions and to complete

a normal workday and work week without interruptions from psychologically based symptoms;

and to perform at a consistent pace without an unreasonable number and length of rest periods.

(Tr. 193-94).  With respect to social interaction, the Doe Report states that plaintiff was markedly

limited in his ability to: interact appropriately with the general public, ask simple questions or

request assistance, accept instructions, and respond appropriately to criticism from supervisors.

(Tr. 194).  The report further notes that plaintiff had never received any treatment for his severe

mental health problems because he did not have insurance or money to afford it, and because he

believed the counseling he received in the past was not helpful.  (Tr. 195).  The report also

indicates that plaintiff reported a suicide attempt via ingestion of rat poisoning about one year

previous.  *Id.*  Plaintiff reported that he suffers from extreme anxiety resulting in tremors and that

21

he feels hopeless and helpless. Plaintiff further indicated that "I want to die. I'll be happy when it (life) is over." (Tr. 195). The Report noted that plaintiff has extreme discomfort around others. Notably, "[i]f even two familiar persons visit the house, the claimant has to retire to his room after only 30 minutes because of his anxiety and tremors." *Id*. The Doe Report concludes that plaintiff's "extreme discomfort with other people prevents him from being able to perform even simple, routine work." *Id.*

The ALJ acknowledged the existence of the Doe Report, but afforded "no weight to this assessment because it is unsigned and undated." (Tr. 24). Instead, the ALJ adopted the findings of Drs. Terry and Chambly, the non-reviewing state agency psychologists, in formulating plaintiff's mental RFC.

Plaintiff contends the ALJ violated agency regulations in failing to recontact the state agency about the Doe Report to request the missing information. The undersigned agrees.

The United States Supreme Court has found that "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)). *See also Heckler v. Campbell*, 461 U.S. 458, 470 (1983) (ALJ has duty to develop record because of non-adversarial nature of Social Security benefits proceedings). Social Security Regulations also require the ALJ to consider every medical opinion and provide specific, legitimate reasons for adopting or rejecting those findings. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").

In this same vein, plaintiff contends it was incumbent upon the ALJ to contact the state agency medical source who performed the consultative examination to furnish the missing

22

information in accordance with 20 C.F.R. § 404.1519p, rather than ignoring the Doe Report because it was unsigned and undated. Section 404.1519p(b) provides that if a consultative opinion is inadequate or incomplete then the ALJ must "contact the medical source who performed the consultative examination, give an explanation of [the Commissioner's] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." One element of a "complete" report is a proper signature. 20 C.F.R. § 404.1519p(a). Plaintiff argues the ALJ erred when he failed to contact the state agency for the name of the medical consultant and the date of the mental RFC assessment and when he failed to consider the evidence of disability contained in the Doe Report.

The Commissioner argues that the regulation cited by plaintiff is inapplicable to this case because it applies only to consultative examiners and not to state agency reviewing physicians or psychologists who perform only a record review and who do not examine the claimant. The Commissioner contends that the unsigned and undated RFC assessment was not from a consultative examiner and, therefore, the ALJ was not required under Section 404.1519p(b) to recontact the state agency. The Commissioner contends that the applicable regulation is 20 C.F.R. § 404.1512(e), which provides that the Commissioner will recontact medical sources only "[w]hen the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled. . . ." The Commissioner argues that the ALJ had sufficient information to determine that plaintiff was not disabled and therefore was not required to recontact the state agency to obtain the author and date of the Doe Report.

While it does appear from this Court's review of the Doe Report that the undated and unsigned RFC assessment is from a non-examining state agency medical consultant and not a consultative examiner,[5] this distinction is not particularly relevant to the Court's analysis in view of the ALJ's duty to fully and fairly develop the record on both sides of the disability issue and to properly consider every medical opinion of record.  Here, the ALJ failed to do both.

As the Commissioner points out, the regulations require the ALJ to recontact medical sources when the evidence received from such sources is inadequate to determine whether the claimant is disabled.  The Commissioner contends there was plenty of evidence from which the ALJ could conclude that plaintiff's mental impairments were not disabling, to wit, the reports of Drs. Terry and Chambly.  Yet, under the circular logic of the Commissioner's argument, an ALJ could ignore all evidence of disability, consider only evidence of non-disability, and conclude that there was no reason to consider evidence of disability because there was sufficient evidence of non-disability.  Such an approach would be contrary to the ALJ's duty to develop evidence on both sides of the disability issue.  *Sims*, 530 U.S. at 111.

The ALJ rejected the Doe Report not because it differed in substance from the Terry and Chambly report, but because it was not signed or dated.  (Tr. 24)[6].  The Terry, Chambly, and Doe

---

[5] It does not appear that the Doe Report is from a consultative examiner, *i.e.,* a physician or psychologist who actually performs a physical or mental examination of the claimant at the request of and paid for by the Social Security Administration, but rather from a non-reviewing state agency medical consultant.  *See* 20 C.F.R. § 404.1519.  The report, which consists of the Psychiatric Review Technique Form, mental RFC assessment, and Functional Capacity Assessment, are completed on forms typically used by the state agency in its review of disability claims at the initial and reconsideration stages of the disability process at the Bureau of Disability Determination.  In addition, the Functional Capacity Assessment at Tr. 195 relies upon and quotes verbatim from Dr. Seifert's consultative examination report, further supporting the conclusion that Dr. Doe was a reviewing physician or psychologist, and not a consultative examiner.

[6] The ALJ's decision states, "The undersigned accords no weight to this assessment *because* it is unsigned and undated."  (Tr. 24) (emphasis added).

24

reports are all based on a review of Dr. Seifert's report and plaintiff's statements about his activities and limitations. Importantly, however, the Doe Report reaches a different conclusion as to plaintiff's functional capacity, one that is potentially dispositive in this case. The Doe Report, which states that plaintiff was markedly limited in 14 areas of mental functioning, is a medical source opinion that favors plaintiff's disability claim. Yet, the ALJ declined to consider this report because it was unsigned and undated. Therefore, the only medical evidence favoring plaintiff's claim of disability based on significant mental impairments was never weighed by the ALJ in assessing plaintiff's mental functional capacity. It is well-settled that an ALJ may not "pick and choose" only that evidence which supports his decision, but must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his conclusions regarding the evidence. *See Howard v. Commissioner*, 276 F.3d 235, 240-41 (6th Cir. 2002). Given the limited evidence of record relating to plaintiff's mental condition[7], the unsigned and undated report is highly probative of plaintiff's mental impairments and resulting limitations, and should have been properly evaluated by the ALJ pursuant to 20 C.F.R. §§ 404.1527(d) and 416.927(d). In light of the ALJ's duty to fully and fairly develop the record, the undersigned finds that the ALJ erred in failing to contact the state agency to obtain the author and date of the Doe Report.

Nevertheless, the Commissioner asserts that any error in this regard was harmless because the mental RFC assessment in the Doe Report would have been entitled to no weight, even if it

---

[7] The fact that plaintiff has not received mental health treatment should not be used to evaluate the severity of his condition. *See Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) (Although an "[a]ppellant may have failed to seek psychiatric treatment for [her] mental condition, . . . it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

was signed and dated, because it was unsupported by and inconsistent with the record. This assertion is not well-taken. As indicated above, the Doe Report, as well as the Terry and Chambly reports relied upon by the ALJ, are based on the same evidence: Dr. Seifert's consultative examination and plaintiff's statements about his functioning. It is hard to see how the Doe Report is "unsupported" and "inconsistent" with the evidence of record when the reports relied on by the ALJ are based on the same evidence. In any event, the ALJ did not make such a determination in the first instance and declined to consider or weigh this evidence at all. As it is the duty of the ALJ, and not the Court, to weigh the medical evidence, the ALJ's failure to provide a substantive basis for rejecting this evidence prevents the Court from engaging in meaningful review of the ALJ's decision.

Accordingly, this matter should be remanded for further proceedings in order to determine the author and date of the unsigned Doe Report. On remand, if the author and date of the report are identified, the ALJ should be instructed to properly consider and weigh this assessment in accordance with the agency regulations and controlling Sixth Circuit law.

**III. This matter should be reversed and remanded for further proceedings.**

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher,* 17 F.3d at 176. On remand, the ALJ should reassess the weight to afford the treating cardiologist's opinions and clarify the issue of the presence of organ damage as indicated in Dr. Razavi's 2007 report. The ALJ should also authenticate the unsigned and undated mental assessment, weigh such opinion in

26

accordance with the regulations and Sixth Circuit law, reassess plaintiff's RFC, and obtain additional vocational evidence as warranted.

## IT IS THEREFORE RECOMMENDED THAT:

This case be REVERSED and REMANDED for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 8/5/2011

Karen L. Litkovitz
United States Magistrate Judge

27

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

THOMAS MESSER,                              Case No. 1:10-cv-545
    Plaintiff                          Weber, J.
                                                Litkovitz, M.J.

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R"). That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).